United States District Court

For the Northern District of California

1

2

3                    UNITED STATES DISTRICT COURT

4                   NORTHERN DISTRICT OF CALIFORNIA

5

6  JORGE SOTO,

          Plaintiff,                        No. C 09-2842 PJH
7
      v.                              **ORDER DENYING MOTION**
8                                     **FOR CLASS CERTIFICATION**
   COMMERCIAL RECOVERY
9  SYSTEMS, INC.,

10        Defendant.
   _____/
11

12        Plaintiff's motion for class certification came on for hearing before this court on

13  November 30, 2011.  Plaintiff Jorge Soto ("Soto" or "plaintiff") appeared through his

14  counsel, William Kennedy, and Cynthia Singerman.  Defendant Commercial Recovery

15  Systems ("CRS" or "defendant") appeared through its counsel, Jennifer Hutcheson

16  McCune.  Having read the parties' papers and carefully considered their arguments and the

17  relevant legal authority, and good cause appearing, the court DENIES plaintiff's motion for

18  class certification, for the reasons stated at the hearing, and as follows.

19                              **BACKGROUND**

20        This action arises under federal and state Fair Debt Collection Practices acts.

21  Plaintiff Jorge Soto ("Soto"), on his own behalf and that of a proposed class, generally

22  alleges that defendants Chase Home Finance LLC ("Chase") and Commercial Recovery

23  Systems, Inc. ("CRS")(collectively "defendants") unlawfully attempted to collect on

24  outstanding purchase money mortgages after foreclosure sales had taken place – an act

25  prohibited by state and federal law.

26        On April 26, 2007, Soto purchased a single family residential home at 2040 Sommer

27  Street, in Napa, California.  See Class Action Complaint for Violations of the Federal and

28  State Fair Debt Collection Practices Acts ("Class Action Complaint"), ¶ 8.  The cost of the

United States District Court

For the Northern District of California

1   home was $490,000 and Soto bought the property as his primary residence. Id. In order to

2   purchase the residence, Soto applied for and received two home mortgage loans from

3   Chase. The first mortgage was for $416,500 ("first mortgage"), and the second mortgage

4   was for $73,500 ("second mortgage"). Class Action Complaint, ¶ 9. Both were purchase

5   money loans, as reflected by the loan documents and the communications that took place

6   during the loan application process. See id.

7         In 2008, Soto struggled with his mortgage payments, and on February 17, 2009,

8   Soto lost title to his home through a nonjudicial foreclosure sale. Id., ¶ 10. Pursuant to

9   California law – specifically, Code of Civil Procedure § 580b – the foreclosure sale

10  terminated the mortgage holders' interest in both mortgages, and resulted in an

11  extinguishment of Soto's liability to Chase for any remaining balance on the loans following

12  the foreclosure sale. Id., ¶ 11.

13        On February 28, 2009, however – eleven days following the foreclosure sale of his

14  property – Soto received a letter from CRS, a collection agency, seeking to collect $78,710

15  from Soto. See Class Action Complaint, ¶ 12. This was the amount that CRS contended

16  remained due on Soto's second mortgage. One month later, on March 28, 2009, Soto

17  received an automated call from CRS, again stating that Soto owed money in connection

18  with his Chase account, and notifying Soto of CRS' intent to collect the debt. Id. at ¶ 13.

19  Soto also received a personal call from a CRS representative, stating that Soto was liable

20  for the outstanding amount on the second mortgage. Id. at ¶ 14. After Soto explained to

21  the representative that he did not believe he owed any money on the second mortgage

22  following the foreclosure, the CRS representative continued to insist that money was owed.

23  Id.

24        Finally, in early May 2009, a Chase representative called Soto, leaving a message

25  for him. When Soto returned the call, the Chase representative – who identified himself as

26  Steven – sought payment in an amount exceeding $70,000 in connection to outstanding

27  liability on the second mortgage. Class Action Complaint, ¶ 15. Chase called yet again on

28

United States District Court

For the Northern District of California

1  May 15, 2009, informing Soto once more that he had to pay on the second mortgage. Id.

2  at ¶ 16.

3      As a result of the foregoing, Soto has filed the instant complaint on his behalf an on

4  behalf of a similarly situated class of individuals.[1] Specifically, Soto brings suit on behalf of

5  a proposed class consisting of all California residents who (a) took out one or more loans

6  subject to California Code of Civil Procedure § 580b; (b) had the real property securing the

7  loan(s) sold in foreclosure; and (c) were subjected to collection attempts by CRS following

8  the foreclosure sale. See Class Action Complaint, ¶ 17.

9      Soto alleges that CRS improperly sought to collect on outstanding liabilities owed on

10 foreclosed properties, despite the fact that California Code of Civil Procedure § 580b

11 prohibits collection attempts on money purchase loans secured by foreclosed properties

12 that were primary residences. To that end, plaintiff alleges two causes of action against

13 defendants: (1) for violation of the Federal Fair Debt Collection Practices Act ("FDCPA"), 15

14 U.S.C. § 1692 et seq.; and (2) for violation of California's Fair Debt Collection Act, Cal. Civil

15 Code § 1788 et seq. See generally Class Action Complaint.

**DISCUSSION**

17 A.    Legal Standard

18     In order for a class action to be certified, plaintiffs must prove that they meet the

19 requirements of Federal Rule of Civil Procedure 23(a) and (b). As a threshold to class

20 certification, plaintiffs must satisfy four prerequisites under Rule 23(a). First, the class must

21 be so numerous that joinder of all members individually is "impracticable." See Fed. R. Civ.

22 P. 23(a)(1). Second, there must be questions of law or fact common to the class. Fed. R.

23 Civ. P. 23(a)(2). Third, the claims or defenses of the class representative must be typical

24 of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). And fourth, the person

25 representing the class must be able to protect fairly and adequately the interests of all

26

27     [1]    Plaintiff's complaint actually alleges two proposed classes, one that was exposed to CRS' collection efforts, and the other exposed to Chase's collection efforts. However, since

28 Chase was voluntarily dismissed on November 19, 2009, only one actionable class remains.

United States District Court

For the Northern District of California

1   members of the class.  Fed. R. Civ. P. 23(a)(4).  The parties moving for class certification

2   bear the burden of establishing that the Rule 23(a) requirements are satisfied.  Gen'l Tel.

3   Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982); see also Wal-Mart Stores, Inc. v.

4   Dukes, 131 S.Ct. 2541, 2551 (2011).

5           If all four prerequisites of Rule 23(a) are satisfied, the court then determines whether

6   to certify the class under one of the three subsections of Rule 23(b), pursuant to which

7   named plaintiffs must establish that either 1) there is a risk of substantial prejudice from

8   separate actions; or 2) declaratory or injunctive relief benefitting the class as a whole would

9   be appropriate; or 3) common questions of law or fact common to the class predominate

10  and that a class action is superior to other methods available for adjudicating the

11  controversy at issue.  See Fed. R. Civ. P. 23(b)(3).

12          The court does not make a preliminary inquiry into the merits of plaintiffs' claims in

13  determining whether to certify a class.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156,

14  177 (1974).  It will, however, scrutinize plaintiffs' legal causes of action to determine

15  whether they are suitable for resolution on a class wide basis.  See, e.g., Moore v. Hughes

16  Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  Making such a determination will

17  sometimes require examining issues that overlap with the merits.  See Wal-Mart Stores,

18  131 S.Ct. at 2551-52 (acknowledging that frequently, court's "rigorous analysis" will entail

19  some overlap with the merits of the plaintiff's underlying claim).  The court will consider

20  matters beyond the pleadings, if necessary, in order to ascertain whether the asserted

21  claims or defenses are susceptible of resolution on a class wide basis.  See McCarthy v.

22  Kleindienst, 741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984).

23  B.      Legal Analysis

24          Through this motion, plaintiff seeks certification of a class pursuant to Federal Rules

25  of Civil Procedure 23(a) and (b)(3).  The class plaintiff seeks to certify is a class of

26  California residents that includes: persons with mortgage loans secured by property in

27  California; where the mortgage loan was subject to California Code of Civil Procedure §

28

4

United States District Court
For the Northern District of California

1  580b in that the loan was a purchase money loan for the purchase of a dwelling for not

2  more than four families, and for property which was owner-occupied; where the real

3  property securing the loan was sold in foreclosure; and where CRS engaged in collection

4  attempts after foreclosure on or after June 25, 2008.  See Mot. Class Cert. at 3:15-23;

5  Complaint, ¶ 17.

6       Plaintiff contends that the critical issue is whether California Code of Civil Procedure

7  ("CCP") § 580b has the effect of rendering any deficiency debts on money purchase loans

8  resulting from foreclosure sales void.  Plaintiff contends that if such deficiency debts are

9  void, then any attempt to collect them is a clear violation of the federal and state fair debt

10 collection practices acts.  However, if § 580b is interpreted as merely prohibiting judgments

11 as to these deficiency balances, but does not render the deficiency debt itself void, then

12 collection attempts are not in and of themselves prohibited, but such collection attempts

13 must comply with the law and collectors must clearly explain to individuals that the payment

14 sought is voluntary.  Either way, however, plaintiff contends that defendant here has

15 violated the law.

16      It appears from the papers that both parties agree that the merits of this case

17 revolve around this disputed issue of law –  whether § 580b renders deficiency debts based

18 on foreclosure sales void, or whether it merely prohibits deficiency judgments based on

19 foreclosure sales.  If the former, the parties appear to both agree that neither a judgment

20 nor collection efforts on the debt may be attempted.  And if the latter, collection efforts may

21 be undertaken with respect to the outstanding debt – but the disclosures made in any

22 attempt to collect must comply with fair debt collection practices, which plaintiff contends

23 did not occur.

24      With this legal backdrop, the court turns to plaintiff's Rule 23 showing.

25      1.    Plaintiffs' Rule 23(a) Showing

26      As indicated in the legal standards section above, plaintiff must first demonstrate

27 that he has satisfied the requirements for class certification under Rule 23(a), which

28

5

United States District Court

For the Northern District of California

1  requires a showing as to the following four elements:  numerosity, commonality, typicality,

2  and adequacy.  When considering class certification under Rule 23, district courts "are not

3  only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of

4  Rule 23(a) have been satisfied."  See Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 581

5  (9th Cir. 2010)(this standard has not changed with the Supreme Court's recent Wal-Mart

6  ruling).  In doing so, and as Wal-Mart clarifies, a district court must examine evidence going

7  to the merits, to the extent examination of that evidence necessarily overlaps with the

8  analysis required to determine whether Rule 23(a) factors have been met.

9             a.        numerosity

10        Rule 23(a)(1) requires that a class be so numerous that joinder of all members is

11  impracticable.  In order to satisfy this requirement, plaintiffs need not state the "exact"

12  number of potential class members, nor is there a specific number that is required.  See In

13  re Rubber Chems. Antitrust Litig., 232 F.R.D. 346, 350-51 (N.D. Cal. 2005).  Rather, the

14  specific facts of each case must be examined.  In re Beer Distrib. Antitrust Litig., 188

15  F.R.D. at 561 (citing General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980)).  While the

16  ultimate issue in evaluating this factor is whether the class is too large to make joinder

17  practicable, courts generally find that the numerosity factor is satisfied if the class

18  comprises 40 or more members, and will find that it has not been satisfied when the class

19  comprises 21 or fewer.  See, e.g., Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d

20  473, 483 (2d Cir. 1995); Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998).

21        The parties here dispute what the class membership numbers are.  Ultimately,

22  however, regardless whether they are on the upper end at 92, as plaintiff contends, or on

23  the lower end at 63, as defendant asserts, the court finds, using 40 as the general

24  benchmark, that numerosity is satisfied.

25             b.        commonality

26        Commonality requires that there must be questions of law or fact common to the

27  class.  Fed.R.Civ.P. 23(a)(2).  The commonality preconditions of Rule 23(a)(2) have

28

generally been construed permissively.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).   To share sufficient factual commonality to satisfy the minimal requirements of Rule 23(a)(2), "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003). "Where the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists."  Parra v. Bashas', Inc., 536 F.3d 975, 978-79 (9th Cir. 2008); see also Wal-Mart, 131 S.Ct. at 2551 (citations ommitted)("What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation").

Here, although defendant attempts to make much of the fact that some members of the class were subject only to verbal collection attempts and were not subject to written collection attempts, these objections are not sufficient to show a lack of commonality. Generally, all plaintiffs share the same legal issue – i.e., whether they could have properly been the subject of collection attempts pursuant to § 580b, given the deficiency debts they owed based on purchase money loans for properties that were foreclosed – and the slightly "divergent factual predicates" they share are insufficient to preclude a finding of commonality.

c.      typicality

The third requirement under Rule 23(a) is that the claims or defenses of the class representatives must be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality exists if the named plaintiffs' claims are "reasonably coextensive" with those of absent class members.  Staton, 327 F.3d at 957.  To be considered typical for purposes of class certification, the named plaintiff need not have suffered an identical wrong.  Id.  Rather, the class representative must be part of the class and possess the same interest and suffer the same injury as the class members.  See Falcon, 457 U.S. at

1   156.

2      "The purpose of the typicality requirement is to assure that the interest of the named

3   representative aligns with the interests of the class."  Hanon, 976 F.2d at 508 (citation

4   omitted).  According to the Ninth Circuit, "[t]ypicality refers to the nature of the claim or

5   defense of the class representative, and not to the specific facts from which it arose or the

6   relief sought."  Id. (quotation omitted).  "The test of typicality is whether other members

7   have the same or similar injury, whether the action is based on conduct which is not unique

8   to the named plaintiffs, and whether other class members have been injured by the same

9   course of conduct."  Id. (internal quotation marks omitted); see also Armstrong v. Davis,

10   275 F.3d 849, 868 (9th Cir. 2001) (typicality is satisfied when each class member's claim

11   arises from the same course of events, and each class member makes similar legal

12   arguments to prove the defendant's liability); Lightbourn v. County of El Paso, 118 F.3d

13   421, 426 (5th Cir. 1997)(typicality focuses on the similarity between the named plaintiffs'

14   legal and remedial theories and the legal and remedial theories of those whom they purport

15   to represent).  In practice, the commonality and typicality requirements of Rule 23 "tend to

16   merge."  Gen'l Tel. Co. Of Southwest, 457 U.S. at 158 n. 13.  The Ninth Circuit interprets

17   the typicality requirement permissively.  Hanlon, 150 F.3d at 1020.

18      Plaintiff has a similar injury to the putative members of the class, since all are

19   claiming that CRS unlawfully sought to collect a deficiency judgment in violation of § 580b

20   and in violation of the fair debt collection practices statutes (state and federal).

21   Furthermore, the fundamental conduct of which plaintiff and the putative members

22   complain – i.e., CRS' conduct in attempting to collection on the deficiency debts – is the

23   same for all members, in a general sense, even if the nature of the attempts varied among

24   class members.  Thus, it is the same general course of events undertaken by defendant

25   that has prompted all the class members' claims.  And while defendant argues that Soto's

26   claim is atypical because he is one of three putative class members sent the initial PD1

27   letter but not the other two letters, this argument rings hollow.  The content of all letters,

28

United States District Court
For the Northern District of California

8

United States District Court

For the Northern District of California

1  and the conduct complained of on CRS' behalf, does not depend upon the type of letter

2  sent but rather on the mere fact that all were sent letters.

3          Furthermore, the court rejects as without support CRS' argument that the separate

4  state court action that plaintiff is pursuing against Chase somehow renders plaintiff's claims

5  atypical.  Pursuit of a separate law suit against a separate defendant is not the same thing

6  as the pursuit of claims separate from the class in the same lawsuit against the same

7  defendant, which could perhaps suggest atypicality.

8                  d.      adequacy

9          The fourth requirement under Rule 23(a) is adequacy of representation.  The court

10  must find that named plaintiff's counsel is adequate, and that named plaintiff can fairly and

11  adequately protect the interests of the class.  To satisfy constitutional due process

12  concerns, unnamed class members must be afforded adequate representation before entry

13  of a judgment which binds them. See Hanlon, 150 F.3d at 1020.  Legal adequacy is

14  determined by resolution of two questions: (1) whether named plaintiffs and their counsel

15  have any conflicts with class members; and (2) whether named plaintiffs and their counsel

16  will prosecute the action vigorously on behalf of the class. Id.  Generally, representation

17  will be found to be adequate when the attorneys representing the class are qualified and

18  competent, and the class representatives are not disqualified by interests antagonistic to

19  the remainder of the class. Lerwill v. Inflight Motion Pictures, 582 F.2d 507, 512 (9th Cir.

20  1978).

21          Here, plaintiff asserts that his counsel has the right qualifications to prosecute this

22  class action, and furthermore that there are no conflicts between him as the class

23  representative and the putative class members.  Defendant takes issue with this, asserting

24  that there are conflicts present between the named plaintiff and the class members, as well

25  as between counsel and the class.  Specifically, defendant notes that (a) Soto cannot

26  adequately represent the class since he has different incentives to vigorously pursue class

27  claims, based on his separate pending litigation against Chase in state court; and (b) class

28

United States District Court

For the Northern District of California

1    counsel cannot vigorously pursue litigation on the class' behalf, since they, too, are

2    representing Soto in the state proceedings.

3            As with the discussion on typicality above, there is simply no support for these

4    conclusions in the record or in the law.  At best, defendant cites only to Moore's Federal

5    Practice Guide, for the proposition that to the extent a plaintiff has non-class claims that he

6    pursues in addition to his class claims in the same litigation, a conflict may arise.  But this is

7    simply not the scenario presented here.  The state and federal proceedings are unrelated,

8    and plaintiff asserts only class claims in this action, and the court assumes that class

9    counsel has and does routinely litigate more than one case at a time.  Adequacy has been

10   satisfied.

11           2.      Plaintiff's Rule 23(b)(3) Showing

12           Plaintiff seeks certification pursuant to Rule 23(b)(3), which requires plaintiff to

13   establish that common questions of law or fact common to the class predominate, and that

14   a class action is superior to other methods available for adjudicating the controversy at

15   issue.  See Fed. R. Civ. P. 23(b)(3).

16           Defendant argues that common factual questions do not predominate, because

17   individual inquiry must be made among the class members to demonstrate the type and

18   content of collection activity that allegedly took place (i.e., whether a collection letter was

19   received and/or whether and what verbal collection activity took place), whether putative

20   class member's homes were owner occupied such that the owners are entitled to the

21   protections afforded by CCP § 580b, and whether putative class members suffered

22   individual damages apart from statutory damages.  Defendant highlights in particular the

23   necessity of individual inquiry in determining whether each loan falls under the protection of

24   § 580b, because this provision – which covers only borrowers who occupy their home as a

25   primary residence and not those who rent out their home or use it as a secondary

26   residence – is at the heart of plaintiff's liability arguments.

27           Plaintiff, in response, asserts that proof of collection activity is simple and covered by

28

1  mere membership in the class – regardless whether the collection activity was written or

2  verbal – and that proof of § 580b applicability, in particular, can be made based on uniform

3  residential loan applications supplied by Chase.  Plaintiff also notes that other courts –

4  primarily in Illinois – have already found that the uniform residential loan applications are

5  sufficient proof of the character of class members' loans.

6          On this question, defendant's arguments are strongest.  As both parties appeared to

7  concede at the hearing, the heart of plaintiff's case rests upon a legal determination as to

8  whether and how CCP § 580b applies to plaintiff and the putative class members.  As such,

9  if plaintiff is to succeed in securing class certification, proof of the statutory provision's

10  applicability to the class members must be susceptible to class wide proof.  Furthermore,

11  and § highlighted by defendant, demonstrating the provision's applicability to the class

12  depends in part upon whether the loans purportedly secured by the class members from

13  Chase were "in fact used to pay all or part of the purchase price" of dwellings that were

14  "occupied, entirely or in part, by the purchaser."  See Cal. Code Civ. Proc. § 580b.

15          Here, some of the potential class members have already been disqualified from the

16  class because, although they indicated on the uniform residential loan application that their

17  purchase money loan was for a primary owner-occupied residence, it wasn't.  It was for an

18  investment home, or for a second home.  Thus, the uniform applications that plaintiff

19  wishes to rely upon for class-wide proof have demonstrably been shown to provide

20  unreliable proof of loans utilized for owner-occupied dwellings.  As such, they expose a

21  need for individualized inquiry, since plaintiff cannot rely on the applications to prove that

22  each member of the class "in fact" used the subject loans to purchase an owner-occupied

23  residence, but must instead rely upon factual proof unique to each individual in order to do

24  so.

25          To the extent that plaintiff otherwise relies upon out of circuit case law to support

26  reliance on the uniform residential loan applications, plaintiff's case citations are not wholly

27  apposite, since the cases plaintiff relies on mostly considered the reliability of uniform loan

28

United States District Court
For the Northern District of California

11

United States District Court

For the Northern District of California

1 applications in the TILA context and furthermore, since none of those cases dealt with a

2 situation like this one – where the very legal liability at stake centers precisely on the loan

3 status of potential class members (i.e., § 580b only applies if the class members got

4 purchase money loans for primary residences).

5       In view of the critical nature of the foregoing issue, and since resolution of the issue

6 would require delving into each class member's actual facts in order for the fact finder to

7 conclusively determine the purposes for which each plaintiff actually secured their loans,

8 the court concludes that individual issues predominate.

9       Moreover, the court also notes that to the extent the content of any verbal

10 communications with CRS among class members is critical to determining the merits of

11 plaintiff's claim that CRS' collection efforts violated the state and federal Fair Debt

12 Collection Practices Acts, this is also a highly individualized inquiry, since conversations

13 may have differed among class members.

14       In sum, and for the foregoing reasons, the court finds that common issues do not

15 predominate with respect to critical liability issues in the case, and plaintiff has failed to

16 satisfy the predominance element contemplated by Rule 23(b)(3).

17       C.     Conclusion

18       Accordingly, and for all the foregoing reasons, the court DENIES plaintiff's motion for

19 class certification, due to plaintiff's failure to establish the requisite elements pursuant to

20 Rule 23(b)(3).

21       The parties shall appear at a case management conference, in order to establish a

22 pretrial schedule, on January 5, 2012, at 2:00 p.m.

23 **IT IS SO ORDERED.**

24 Dated: December 5, 2011

25

26 PHYLLIS J. HAMILTON
United States District Judge

27

28

12